# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| Carlos Jaimez Reyes, | Civil No. 10cv150 JLS (PCL) |
| --- | --- |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Kane, Warden, et al., | |
| Respondents. | |

State prisoner Carlos Jaimez Reyes was tried by a San Diego jury and convicted of two counts of attempted murder of his cohabitant and her daughter, two counts of assault with caustic chemicals, one count of attempt to burn a structure, two counts of making a criminal threat, and three counts of child abuse likely to produce great bodily injury or death. (Lodgment 6, at 1-2.) Sentenced to 14 years in prison, (id.), he is proceeding pro se with a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 7.) Petitioner challenges his conviction of attempted murder on the sole ground that the trial court's failure to instruct the jury on a lesser-included offense of attempted voluntary manslaughter constitutes a violation of his due process rights under the Fourteenth Amendment. (Id. at 21-26.) Respondent argues that Petitioner has failed to present a federal question and that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. (Doc. 16-1, at 6.)

This case is before the undersigned Magistrate Judge pursuant to Local Civil Rule 72.1(c)(1)(c) for Findings of Fact and Recommendation for Disposition. Having considered the lodged record and the arguments presented, the Court recommends that the petition be DENIED.

## I.   FACTUAL BACKGROUND

Federal habeas courts presume the correctness of a state court's determination of factual issues unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The parties do not challenge the accuracy of the California Court of Appeal's summary of the underlying facts of the case:

Maria Urias testified that on December 27, 2006, she and Reyes, her cohabitant, got into an argument. They yelled at each other for approximately 20 minutes. She told him to leave the apartment and that she wanted to end their relationship. He said, "Look what I am going to do." He went downstairs and returned with a gallon of gasoline, which he poured over Urias. Urias shouted for her daughter, Wendy. Reyes poured gasoline over Wendy, who tried to elude him. Urias told Wendy to call the police. Reyes ran downstairs and returned with a cigarette lighter. He showed it to Urias, who became scared as he threatened to burn Urias and Wendy. Reyes threw the lighter at Urias and left. He stood at the gate drinking beers. He started to light matches and throw them on the ground near the garage. Shortly afterwards the police arrived and arrested Reyes. Urias also testified she and Reyes "would always fight and [she] would kick him out. [She] always said that, but [she] knew that he would never leave." They always ended up staying together.

Wendy testified she was in her bedroom and heard her mother screaming. She came out of the room and her mother said she and Wendy were leaving the apartment because Reyes had said he would burn it down. Reyes ran upstairs, threw gas on her mother and on Wendy's head and shoulders, and screamed that he was going to burn them. He was angry and pushed the bedroom door as Wendy tried to close it. Wendy called the police. She could see from her window that Reyes and Urias were arguing. He held a cigarette lighter above the level of his head and said he was going to burn the house down.

Chula Vista Police Officer Jason Deaner testified he responded to a call to Reyes' apartment at approximately 9:30 that night. He detained Reyes, who had a cigarette lighter in his pocket. As soon as Deaner entered the apartment he experienced "the overpowering smell of gasoline." He saw gasoline on the top of the stairs and on the carpet of the stairs. "At the base of the stairs there was what appeared to be like a stain. . . . You could see some fluid that had come down the stairs and was at the base of the stairwell." He saw a broken match stick and he became concerned because "it indicated to [him] that somebody may have attempted to strike that match with gas everywhere."

Chula Vista Police Officer Roman Granados testified that on that night he spoke to Urias, who stated she and Reyes had argued earlier that night, and she told Reyes their relationship was over. Reyes responded to this effect: "If you're going to leave me, I'm going to burn you and the whole house down." Chula Vista Police Officer James Horst testified that at the crime scene he photographed and collected evidence on the apartment floor including two matchsticks, one intact and the other spent.

(Lodgment 6, at 2-3.)

///

///

## II. PROCEDURAL HISTORY

On June 18, 2009, the California Court of Appeal affirmed the judgment against Reyes. In its reasoned, unpublished decision in case no. D052753, the state appellate court unanimously affirmed the judgment in its entirety, rejecting as without merit the claim of alleged instructional error based on the absence of a jury instruction on attempted voluntary manslaughter as a lesser included offense of attempted murder. (Lodgment 6, 4-9.) The California Court of Appeals provided the following rationale for its decision:

We reject the contention the court erred by declining to instruct regarding heat of passion. As a preliminary matter, any claim of error is forfeited because defense counsel did not object to the court's decision to decline to instruct regarding heat of passion. (citation omitted) The record shows that the trial court specifically asked defendant's counsel if he was requesting the heat of passion instruction and he declined it, saying, "that element would not be supported by the defense that is being proferred here."

In any event there was no instructional error.

. . .

Here, Reyes might have satisfied the subjective element of heat of passion based on his claim he suffered from paranoid delusions. However, he did not meet the objective element. Reyes and his cohabitant had argued frequently, and although she previously threatened to leave him, she never carried out her threat. Despite Reyes' many years of paranoid delusions, he never responded to Urias's previous threats by throwing gasoline on her inside the apartment, holding up a cigarette lighter and lightening matches above her head and inside the apartment where the carpet had been soaked with gasoline. Under these circumstances, we conclude that a person of average disposition would not have responded as Reyes did to similar threats from a cohabitant.

Separately, we note that it is reasonably inferable from the record that between the time Reyes left the bedroom, ran downstairs to get gasoline and returned upstairs, sufficient time had passed to have permitted him to cool off and regain clear reasoning and judgment; therefore, he did not act out of heat of passion, and the attempted murder would not be reduced to attempted voluntary manslaughter.

(Lodgment 6, at 4-9.)

Petitioner raised the same ground with the California Supreme Court. On August 26, 2009, the California Supreme Court summarily denied the petition. (Lodgment 10.)

On February 22, 2010, Petitioner filed his First Amended Petition for Writ of Habeas Corpus in this Court. (Doc. 7.) Respondent filed an Answer, (doc. 16), and Petitioner filed a Traverse, (doc. 19).

///

### III. STANDARD OF REVIEW

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Only errors of federal law can support federal intervention in state court proceedings. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation). Federal habeas courts are bound by the state's interpretation of its own law. Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal courts may not reexamine state court determinations on state-law questions); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990) (federal courts "have no authority to review a state's application of its own laws").

Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997). AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (citation omitted). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A federal court can grant a prisoner habeas relief only if it determines the result of a claim adjudicated on the merits by a state court "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Bell v. Cone, 535 U.S. 685, 694 (2002). A state court's decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court authority, or (2) it "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but reaches a different result. Early v. Packer, 537 U.S. 3, 8 (2002). To be found "unreasonable," the application of the precedent "must have been more than incorrect or erroneous;" it "must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citation omitted); Williams v. Taylor, 529 U.S. 362, 409-10 (2000) (distinguishing an objectively

unreasonable application from an incorrect application); see also Middleton v. McNeil, 541 U.S. 433, 436 (2004) (*per curiam*).

The denial of a habeas petition by the California Supreme Court without comment or citation constitutes a decision "on the merits of the federal claims" presented. Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992). Where there is no reasoned decision from the state's highest court, the reviewing federal court "looks through" to the rationale of the underlying decision. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground"); Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005) ("we review the 'last reasoned decision' by a state court").

**IV. DISCUSSION**

"A state court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding." Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). In order for the omission of a jury instruction at trial to warrant habeas relief, a petitioner must show that the state court's failure to give a particular instruction "so infect[ed] the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the Fourteenth Amendment." Id. A jury instruction that fails to give effect to the requirement that the State must prove every element of the charged offense would violate due process. Middleton v. McNeil, 541 U.S. 433, 437 (2004). The alleged instructional error must be evaluated in the context of the jury instructions as a whole. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Due process does not require the trial court to give a particular instruction if that instruction is not supported by the evidence presented at trial or was not required by the defense's theory of the case. See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995); U.S. v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).

Here, Petitioner did not present a heat-of-passion defense at trial and defense counsel specifically declined a jury instruction regarding heat of passion. (Lodgment 2, 6 RT 786.) Petitioner's defense was that he did not possess the requisite intent to commit attempted murder because he was delusional, was under the influence of alcohol, and suffered from withdrawals from

methamphetamine at the time of the crime. (Lodgment 2, 7 RT 816-818.) Defense counsel specifically stated that because the heat-of-passion defense assumes a set of circumstances that would cause a *reasonable* person to lose self-control, this particular defense would not be available in this case where she argued that Reyes suffered from delusions that caused him to act without the intent to kill. (Lodgment 2, 6 RT 785-86.) Moreover, even if one were to assume that Reyes was capable of acting out of the heat of passion at the time of the crime, the trial evidence shows that Reyes would had had ample time between his arguing with the victim and his going downstairs to get the gasoline to regain his senses and proper judgment. Under either scenario, Petitioner's due process rights were not violated as the trial record does not support the use of the heat-of-passion defense. Thus, the state court's decision on this issue was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

## V.  CONCLUSION

Based on the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**. This report and recommendation is submitted to United States District Judge Sammartino pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **February 24, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 4, 2011**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 8, 2011

Peter C. Lewis
U.S. Magistrate Judge
United States District Court